## Grisson v. Commonwealth.

(Decided June 18, 1918.)

### Appeal from Graves Circuit Court

1. Criminal Law—Indictment for Giving Worthless Check—Sufficiency of.—An indictment, under section 1213-a of the Kentucky Statutes, for giving a worthless check followed the statute and was good.

2. Criminal Law—Indictment—Rule in Respect to Exceptions and Provisos in the Statute.—If an exception is contained in the paragraph creating the offense, it must be negatived in the indictment, but if it is in a separate section or a distinct proviso, it is a matter of defense and need not be mentioned in the indictment.

WEBB & WEAKS for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Section 1213-A of the Kentucky Statutes, provides: "That any person who, with intent to defraud, shall make, or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivery, that the maker or drawer has not sufficient funds in such bank or other depository for the payment of such check, draft or order in full upon its presentation; . . . and if the amount of such check or draft be twenty dollars or over, he shall be guilty of a felony and confined in the penitentiary for not less than one year nor more than two years, and the drawer of such check or draft shall be prosecuted in the county in which he delivers same. Provided,

however, that if the person who makes, issues, utters, or delivers any such check, draft or order, shall pay the same within twenty days from the time he receives actual notice, verbal or written, of the dishonor of such check, draft or order, he shall not be prosecuted under this section, and any prosecution that may have been instituted within the time above mentioned, shall, if payment of said check be made as aforesaid, be dismissed at the cost of defendant. The making, drawing, uttering or delivering of such check, draft or order, as aforesaid, shall be *prima facie* evidence of intent to defraud."

The indictment against the appellant, Grisson, was found under this section on December 1, 1917, and charged that he did "unlawfully, wilfully, feloniously and fraudulently draw, utter, deliver and present a certain check, dated September 1st, 1917, and drawn on the First National Bank, of Mayfield, Kentucky, and deliver the same to J. E. Choate and represent to said J. E. Choate that he had funds in said bank to meet said check, when in truth and in fact he had no funds in said bank to meet said check, and he well knew that there were no funds to meet said check in said bank at the time he made said statement and representations to the said Choate, and the said Choate relied upon said statements, and believed in the same, and cashed the said check, and paid said R. S. Grisson the sum of $25.00, the face value of said check, and said check is in words and figures as follows, to-wit: . . . That said check was drawn and placed in circulation with the fraudulent and felonious intent to defraud the First National Bank and J. E. Choate, and the said Grisson did defraud the said J. E. Choate of his property, to-wit: twenty-five dollars at said time he procured the said J. E. Choate to accept and cash said check."

On a trial in March, 1918, under this indictment, Grisson was found guilty and his punishment fixed at one year in the state penitentiary. He asks a reversal of the judgment upon the grounds that the indictment was fatally defective in that it did not charge a public offense; that the evidence was not sufficient to sustain the verdict; that after the verdict he discovered new evidence entitling him to a new trial; that the trial court

committed error in the instructions to the jury; that incompetent evidence was permitted to go to the jury.

The indictment stated a public offense under the statute, and, besides, was free from substantial error. It is, however, argued that the indictment was defective in failing to charge that Grisson failed for twenty days after he received actual notice of the dishonor of the check to pay it, but it was not necessary that this defensive matter should have been set forth in the indictment.

The rule in respect to exceptions and provisos contained in a criminal statute, and the necessity for charging in the indictment that the accused did not come within the provisions of the exception, are thus stated in Commonwealth v. Louisville & Nashville Railroad Company, 140 Ky. 21: "If the exception is contained in the sentence or paragraph of the statute that creates and describes the offense then it must be negatived in the indictment; but if the exception is not found in the sentence or paragraph that creates and defines the offense, but is contained in a separate section or in a distinct proviso or paragraph, it is a matter of defense for the accused, and it is not necessary that the indictment should charge that he did not come within the exception."

Under this rule it was not necessary to make any mention in the indictment of the matter contained in the proviso relieving the defendant of the penalty of the statute if he observed the requirements of the proviso intended for his benefit.

The evidence introduced in behalf of the Commonwealth made out a clear case of guilt under the indictment. It showed that Grisson procured from Choate twenty-five dollars on a check drawn by him on a bank in which he did not have, at the time, any money on deposit, and had not had at any time within two years before the date of the check. On the faith of the check he got from Choate twenty-five dollars, no part of which he ever paid. It would be difficult to make out for the Commonwealth a stronger or clearer case than the evidence in this record does.

Grisson, however, in an effort to escape the penalty for the offense of which the jury found him guilty, testified, in substance, that he told Choate, at the time he gave him the check, that he did not have any money in

the bank, and thereupon Choate loaned him the twenty-five dollars with the understanding that it would be repaid when he, Grisson, had sold some property and placed the proceeds of the sale in the bank.

In respect to the newly discovered evidence, Grisson testified that he got the money from Choate in Mayfield during banking hours; while Choate testified that he accepted the check and let him have the money after the banks had closed for the day. The alleged newly discovered evidence which it was proposed to make by a man named Stubblefield was to the effect that Stubblefield would testify that he saw Choate and Grisson go into the bank on the day on which the check was given about noon and during banking hours. Aside from the fact that this newly discovered evidence was not so material as to have a decisive influence with the jury in determining the guilt or innocence of Grisson, it is shown that Grisson knew that Stubblefield lived in Mayfield, where the trial was had, and that he told Stubblefield, during the trial, that he wanted him to come to the court house and testify, in his behalf, thereby showing, as we think, that he knew the facts that were in the knowledge of Stubblefield in ample time to have procured the evidence of Stubblefield on the trial if he had desired it. Under these circumstances, there is no merit in the ground for a new trial sought to be rested on the alleged newly discovered evidence.

The instructions are complained of, but we find no objection in them; they stated in apt terms the case for the Commonwealth as well as the defense relied on by Grisson.

In respect to the assigned error relating to the admission of incompetent evidence, it is sufficient to say that the evidence to which objection was made in the lower court and overruled, was not so material as to effect the merits of the case.

Upon the whole, we find no error in the record prejudicial to the substantial rights of Grisson, and the judgment is affirmed.